IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESEOGHENE OGBU-SIFO | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 15-2394 |
| | § | |
| TRAVELEX INSURANCE | § | |
| SERVICES, INC. | § | |
| | § | |
| *Defendant.* | § | JURY TRIAL REQUESTED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, Plaintiff, ESEOGHENE OGBU-SIFO files this lawsuit against Defendant, TRAVELEX INSURANCE SERVICES, INC., as follows:

## A. PARTIES

1. Plaintiff, Eseoghene Ogbu-Sifo, ("Sifo") is an individual who is a citizen and resident of the State of Texas.

2. Defendant, Travelex Insurance Services, Inc. ("Travelex"), is a corporation that is incorporated under the laws of the State of Delaware. Defendant has its principal place of business in the State of Nebraska. Defendant may be served with process by serving its registered agent in Texas, CT Corporation System, 19999 Bryant Street, Suite 900, Dallas, Texas 75201.

## B. JURISDICTION

3. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff Sifo, and Defendant Travelex Insurance Services, Inc. are citizens of

different U.S. states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

### C. VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

### D. FACTS

5. On or about Friday, November 15, 2013, Mr. Sifo purchased a roundtrip ticket from Houston, Texas to Lagos, Nigeria through CheapOair's website for his mother, Abiwaye Sifo, to attend a family wedding. When Mr. Sifo bought his mother's ticket, he also opted to purchase a travel insurance policy from Travelex for his mother's trip via CheapOair's website at an additional cost. Mr. Sifo subsequently bought a ticket for himself, along with the same travel insurance, to Lagos through CheapOair's website.

6. On December 16, 2013, during her scheduled trip in Lagos, Abiwaye Sifo was critically injured when she was riding as a passenger in a vehicle that was struck by an 18-wheeler.

7. Mr. Sifo immediately notified Travelex in an attempt to quickly examine the terms of his travel insurance policy and transport Ms. Sifo back to the United States to receive medical care. Travelex delayed these requests and denied Mr. Sifo's claim, stating his mother's transport was not covered by the travel insurance policy.

8. Abiwaye Sifo died as a result of the injuries sustained from the motor vehicle collision on December 24, 2013 at a hospital in Lagos, Nigeria.

9. On or about January 6, 2014, after returning to Texas, Mr. Sifo contacted Travelex to inquire about making a claim under the accidental death policy coverage he purchased for his mother, which provides a $100,000 payout. The claims representative who initially spoke to Mr. Sifo noted that accidental death claims were rare, then sent an email to Mr. Sifo describing the documentation necessary to evaluate Mr. Sifo's claim.

10. Mr. Sifo gathered all documents required by Travelex and mailed them on or about February 19, 2014. Mr. Sifo specifically provided 1) the completed claim form, 2) airline ticket and confirmation, 3) certified hospital medical report, 4) certified police report, 5) death certificate, 6) Ms. Sifo's U.S. Residency Card, and 7) signed Travelex proof of death form. Travelex received these documents on February 25, 2014. Mr. Sifo also forwarded the hospital x-rays depicting Ms. Sifo's fatal injuries with the corresponding Cervical Spine Medical Report to Travelex during that time.

11. Over the next several months, Mr. Sifo called Travelex numerous times to check the status of his claim. Initially, a representative from Travelex claimed he needed to speak with the doctor in Lagos and was not able to reach him. After Mr. Sifo looked into the matter, Mr. Sifo learned that Travelex could not get through to the hospital because they were misdialing the international telephone number.

12. Mr. Sifo contacted the doctor in Lagos who treated his mother, who indicated he had spoken with a Travelex representative. Mr. Sifo then continued his attempts to reach Travelex by telephone but was frequently placed on hold for several minutes, then transferred to representatives who provided no new information.

13. Because of the severe stress, lack of sleep, depression and anxiety that resulted from the manner in which Travelex was handling Mr. Sifo's claim, Mr. Sifo began to see a therapist on a regular basis during the Spring of 2014.

14. On or about June 2014, after placing another phone call to Travelex, Mr. Sifo was told that a Travelex representative spoke to the doctor in Lagos and was sending the information to his supervisor. Mr. Sifo was told that he could expect to hear something in a matter of weeks. Thereafter, Mr. Sifo continued his attempts to reach a representative that could give him an update on his claim, but was unsuccessful.

15. On or about September 9, 2014, Mr. Sifo wrote an email to CheapOair and Travelex where he demanded a response. In a terse email response, a Travelex representative told Mr. Sifo that his claim was being reviewed. This was the first time Mr. Sifo received anything in writing regarding the status of his claim.

16. A few days later, Mr. Sifo received a phone call from a CheapOair representative who promised she would follow up with Travelex. A month later, Mr. Sifo contacted the same CheapOair representative because he had not heard anything, despite being told otherwise. Mr. Sifo was told that Travelex was still waiting to speak with the doctor in Lagos, even though Travelex had already spoken to the doctor and forwarded the matter to his supervisor months before.

17. On or about November 10, 2014, CheapOair informed Mr. Sifo that his claim was still under consideration by Travelex.

18. Travelex sent its first letter regarding Mr. Sifo's claim to Mr. Sifo on or about February 4, 2015, only after Mr. Sifo's newly retained attorney demanded payment. Travelex

acknowledged and apologized for the "delay of communication and lack of correspondence." Despite this, Travelex stated they were unable to complete Mr. Sifo's claim and demanded new, extraneous information from Mr. Sifo to complete the claim, even though Mr. Sifo had submitted all required information nearly one year prior.

19. Plaintiff's counsel responded to Travelex on February 12, 2015 via letter, reiterating that Mr. Sifo had already provided all necessary documentation, on numerous occasions, required by Travelex to process his claim.

20. Plaintiff's counsel sent a formal demand letter to Travelex on April 20, 2015, pursuant to the written, pre-suit notice requirements enumerated in Section 17.505 of the Texas Business and Commerce Code and Section 541.154 of the Texas Insurance Code. In the letter, Plaintiff described, in detail, the manner in which Travelex engaged in the deceptive and unfair practices that resulted in Plaintiff's damages, mental anguish and attorney's fees.

21. On or about June 30, 2015, Travelex responded to Plaintiff's demand by sending a letter demanding additional, irrelevant information for which they had never previously asked, including a consular report of the death of a US Citizen abroad, and a copy of Ms. Sifo's obituary. By doing so, Travelex has and continues to engage in deceptive practices for the sole purpose of avoiding payment of Plaintiff's bona fide claim.

**E. COUNT 1– Violation of Texas Insurance Code §§ 541.003 and 541.060**

22. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as if fully set forth verbatim.

23. Defendant Travelex is an entity capable of being sued under the Texas Insurance Code.

24. Defendant Travelex violated the Texas Unfair Settlement Practices Act, Ins. Code Sections 541.003 and 541.060 by doing the following:

a. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim with respect to which Defendants' liability had become reasonably clear;

b. Failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of Plaintiff's claim; and

c. Failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff.

25. Defendant's violations of the Texas Unfair Settlement Practices Act proximately caused Plaintiff to suffer actual damages in the amount of the benefits he was wrongfully denied, incidental and consequential damages, mental anguish, court costs, and attorney's fees in an amount within the jurisdictional limits of this Court.

26. Moreover, Defendant's violation of the Insurance Code was knowing. Thus, Plaintiff is entitled to damages in an amount up to three times his actual damages pursuant to Texas Insurance Code § 541.152.

## F. COUNT 2 – Violation of Texas Deceptive Trade Practices-Consumer Protection Act (DTPA - Texas Bus. & Com. Code §§ 17.46 and 17.50)

27. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as if fully set forth verbatim.

28. Defendant Travelex also violated the Texas DTPA, Section 17.46, in the following ways:

a. Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b. Advertising goods or services with intent not to sell them or perform as advertised;

c. Representing that the agreement confers or involves rights, remedies or obligations which it does not have or involve; and

d. Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve.

29. Defendant is a corporation capable of being sued under the DTPA. Plaintiff is a consumer under the DTPA because Plaintiff is an individual who acquired goods or services by purchase.

30. Defendant violated the DTPA when it engaged in false, misleading or deceptive acts or practices that Plaintiff relied on to Plaintiff's detriment. Defendant refused to pay Plaintiff's claim even after Plaintiff had provided all requested information and submitted all of the necessary forms and paperwork, on several occasions.

31. Defendant's actions, as described above, were relied upon by Plaintiff and actually and proximately caused economic damages and mental anguish to Plaintiff in an amount within the jurisdictional limits of this Court.

32. Moreover, the Defendant's conduct, as described above, was intentional and/or knowing. Thus, Plaintiff is entitled to up to three times his mental anguish damages and economic damages pursuant to Texas Bus. & Com. Code § 17.50.

## G. COUNT 3 – BREACH OF CONTRACT

33. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as if fully set forth verbatim.

34. Plaintiff and Defendant were parties to a contract for insurance. As required by the insurance contract, Plaintiff timely submitted valid claims for policy benefits. Defendant breached the contract by stalling and mishandling Plaintiff's valid insurance claim, then failing to pay the benefits under the policy. Defendant's breach proximately caused damages to Plaintiff in an amount within the jurisdictional limits of this Court.

35. Plaintiff made repeated claim status inquiries and demands for payment of benefits under the insurance contract. Plaintiff's demands were refused and remain unpaid.

## H. CONDITIONS PRECEDENT

36. All conditions precedent to Plaintiff's claims have occurred or have been performed.

## I. JURY DEMAND

37. Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## J. ATTORNEY FEES & COSTS

38. Plaintiff is entitled to an award of attorney's fees and costs under Texas Civil Practice & Remedies Code Chapter 38, Section 17.50 of the Texas Business and Commerce Code, and Section 541.152 of the Texas Insurance Code.

## K. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that upon final trial or hearing hereof, this Court enter judgment in favor of the Plaintiff and against Defendant, awarding Plaintiff his actual damages, mental anguish damages, attorney's fees,

compensatory damages, prejudgment and post-judgment interest, costs of court, and such other and further relief as justice may require.

Respectfully submitted,

FELDMAN & FELDMAN, P.C.

/s/ David M. Feldman

David M. Feldman
State Bar No. 06886700
Federal Bar No.: 2994
david.feldman@feldmanlawpc.com
Christin L. Grant
State Bar No.: 24083097
Federal Bar No.: 2656753
Christin.grant@feldmanlawpc.com
3355 West Alabama Street, Suite 1220
Houston, TX 77098
(713) 986-9471 Telephone
(713) 986-9472 Facsimile

ATTORNEYS FOR PLAINTIFF