IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESEOGHENE OGBU-SIFO, § | | |
| Individually, and as Executor of § | | |
| THE ESTATE OF ABIWAYE SIFO § | | |
| § | | |
| *Plaintiffs,* § | | |
| § | | |
| v. § | CIVIL ACTION NO. 4:15-cv-02394 | |
| § | | |
| TRAVELEX INSURANCE § | | |
| SERVICES, INC., AND § | | |
| TRANSAMERICA CASUALTY § | | |
| INSURANCE COMPANY, § | | |
| § | | |
| *Defendants.* § | JURY TRIAL REQUESTED | |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

Plaintiffs, ESEOGHENE OGBU-SIFO, individually, and as the Executor of THE ESTATE OF ABIWAYE SIFO, file this Third Amended Complaint against Defendants, TRAVELEX INSURANCE SERVICES, INC., and TRANSAMERICA CASUALTY INSURANCE COMPANY, f/k/a STONEBRIDGE CASUALTY INSURANCE COMPANY ("TCIC") as follows:

### A.  PARTIES

1. Plaintiff, Eseoghene Ogbu-Sifo, ("Sifo") is an individual who is a citizen and resident of the State of Texas.

2. Plaintiff, Eseoghene Ogbu-Sifo, also brings this suit as Executor of the Estate of Abiwaye Constance Sifo, ("Estate") pursuant to Federal Rule of Civil Procedure 17(a)(1). At the time of Ms. Sifo's death on December 24, 2013, Ms. Sifo had recently obtained US Permanent Residency and was permanently residing with

Plaintiff Sifo at his home in Fort Bend County, Texas. Plaintiff Sifo is one of three surviving children of Ms. Sifo and has the authority to proceed as Executor of Ms. Sifo's estate pursuant to Ms. Sifo's will and the consent of Ms. Sifo's other surviving children. *See* Exhibit A (Abiwaye Sifo Will), Exhibit B (POA – Emmanuel Ogbu-Sifo), and Exhibit C (POA – Edesiri Sifo Ogbu).

3. Defendant, Travelex Insurance Services, Inc. ("Travelex"), is a corporation that is incorporated under the laws of the State of Delaware. Defendant has its principal place of business in the State of Nebraska. Defendant may be served with process by serving its registered agent in Texas, CT Corporation System, 1999 Bryant Street, Ste. 900, Dallas, Texas 75201.

4. Defendant, Transamerica Casualty Insurance Company, f/k/a Stonebridge Casualty Insurance Company ("TCIC") is a foreign corporation incorporated under the laws of the State of Ohio. Defendant has its principal place of business in Maryland. Service of process on Defendant TCIC may be made by serving its designated Attorney for Service at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3140, or by serving TCIC's attorney, should he agree to accept service on behalf of TCIC.

**B.    JURISDICTION**

5. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff Sifo, Defendant Travelex, and Defendant TCIC are citizens of different U.S. states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## C.   VENUE

6.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## D.   FACTS

7.   On or about Friday, November 15, 2013, Mr. Sifo purchased a roundtrip ticket from Houston, Texas to Lagos, Nigeria through CheapOair's website for his mother, Abiwaye Sifo, to attend a family wedding.  When Mr. Sifo bought his mother's ticket, he also opted to purchase a travel insurance policy from Travelex for his mother's trip via CheapOair's website at an additional cost.  Mr. Sifo subsequently bought a ticket for himself, along with the same travel insurance, to Lagos through CheapOair's website.  TCIC is the underwriter for the Travelex insurance policy.

8.   On December 16, 2013, during her scheduled trip to Lagos, Abiwaye Sifo was critically injured when she was riding as a passenger in a vehicle that was struck by an 18-wheeler.

9.   Mr. Sifo immediately notified Defendants in an attempt to quickly examine the terms of his travel insurance policy and transport Ms. Sifo back to the United States to receive medical care.  Defendants delayed these requests and denied Mr. Sifo's claim, stating his mother's transport was not covered by the travel insurance policy.  However, the policy's terms provide for medical evacuation when necessary.

10.   Abiwaye Sifo died as a result of the injuries sustained from the motor vehicle collision on December 24, 2013 at a hospital in Lagos, Nigeria.

11. On or about January 6, 2014, after returning to Texas, Mr. Sifo contacted Defendants by phone to inquire about making a claim under the accidental death policy coverage he purchased for his mother, which provides a $100,000 payout to the insured's estate or beneficiary. During that phone call initiated by Mr. Sifo, Defendants' representative, Chris Hass, told Mr. Sifo that accidental death claims were rare, that Mr. Sifo would need to fill out and submit paperwork provided by Defendants, that Defendants would process his claim, and that there should not be a problem because Mr. Sifo's claim sounded genuine. Chris Hass, then sent an email on January 6, 2014 to Mr. Sifo describing the documentation necessary to evaluate Mr. Sifo's claim. The boilerplate email regarding his mother's passing was insensitive and offensive, as Mr. Hass did not even take the time to write in Abiwaye Sifo's name in the appropriate blank space.

12. Mr. Sifo gathered all documents required by Defendants and mailed them on or about February 19, 2014. Mr. Sifo fully or substantially complied with all of Defendants' requirements and all other legal requirements by timely providing 1) the completed claim form, 2) airline ticket and confirmation, 3) certified hospital medical report, 4) certified police report, 5) death certificate, 6) Ms. Sifo's U.S. Residency Card, and 7) a Proof of Death form signed by Ms. Sifo's doctor. Defendants received these documents on or about February 25, 2014. Mr. Sifo also forwarded, by mail, the hospital x-rays depicting Ms. Sifo's fatal injuries with the corresponding Cervical Spine Medical Report to Defendants during that time.

13. Over the next several months, Mr. Sifo called Defendants numerous times to check the status of his claim, as Mr. Sifo never received written or verbal

confirmation that the documents had been received by Defendants. Initially, one of Defendants' representatives claimed he needed to speak with the doctor in Lagos and was not able to reach him. After Mr. Sifo looked into the matter, Mr. Sifo learned that the representative could not get through to the hospital because they were misdialing the international telephone number.

14. Mr. Sifo contacted the doctor in Lagos who treated his mother, who indicated he had spoken with one of Defendants' representatives regarding his treatment of Mr. Sifo's late mother. Mr. Sifo then continued his attempts to reach Defendants by telephone but was frequently placed on hold for several minutes, then transferred to representatives who provided no new information.

15. Because of the severe stress, lack of sleep, depression and anxiety that resulted from the manner in which Defendants were handling Mr. Sifo's claim, Mr. Sifo sought counseling a regular basis during the Spring of 2014.

16. On or about June 2014, after placing another phone call to Defendants, Lucas Charkot, the primary individual handling Mr. Sifo's claim, told Mr. Sifo that he had spoken to Ms. Sifo's doctor in Nigeria and passed along the information to his superior, and that Defendants had all the information they required to process the claim. Mr. Charkot told Mr. Sifo that he could expect to hear something final in a matter of weeks. Thereafter, Mr. Sifo continued his attempts to reach a representative who could give him an update on his claim, but was unsuccessful.

17. On or about September 9, 2014, Mr. Sifo wrote an email to CheapOair and Travelex where he demanded a response. In a terse email response, one of Defendants' representatives told Mr. Sifo that his claim was being reviewed. This

was the first time Mr. Sifo received anything in writing regarding the status of his claim.

18.  A few days later, Mr. Sifo received a phone call from a CheapOair representative, Cynthia Roman, who promised she would follow up with Defendants. A month later, Mr. Sifo contacted the same CheapOair representative because he had not heard anything, despite being told otherwise.  Mr. Sifo was told that one of Defendants' representatives was still waiting to speak with the doctor in Lagos, even though Defendants' claim representative had already spoken to the doctor and forwarded the matter to his supervisor months before.

19.  On or about November 10, 2014, CheapOair informed Mr. Sifo that his claim was still under consideration by Defendants. During this time and up until litigation was imminent, Defendants never objected to the proof Mr. Sifo had provided, nor did they point out any alleged defects to allow Mr. Sifo time to correct them, or provide reasons why Defendants required additional time or information to evaluate Mr. Sifo's claim.

20.  Defendants sent the first letter regarding Mr. Sifo's claim to Mr. Sifo on or about February 4, 2015, only after Mr. Sifo's newly retained attorney demanded payment.  Defendants acknowledged and apologized for the "delay of communication and lack of correspondence."  Despite this, Defendants unexpectedly stated they were unable to complete Mr. Sifo's claim and demanded new, extraneous information from Mr. Sifo to complete the claim, even though Mr. Sifo had submitted all required information nearly one year prior.

21. Plaintiff's counsel responded to Defendants on February 12, 2015 via letter, reiterating that Mr. Sifo had already provided all necessary documentation, on numerous occasions, required and requested by Defendants to process his claim.

22. Plaintiff's counsel sent a formal demand letter to Defendants on April 20, 2015, pursuant to the written, pre-suit notice requirements enumerated in Section 17.505 of the Texas Business and Commerce Code and Section 541.154 of the Texas Insurance Code. In the letter, Plaintiff described, in detail, the manner in which Defendants engaged in the deceptive and unfair practices that resulted in Plaintiff's damages, mental anguish an attorney's fees.

23. On or about June 30, 2015, Defendants responded to Plaintiff's demand by sending a letter demanding much of the same information Mr. Sifo had already provided, as well as additional, irrelevant information for which they had never previously asked, including a consular report of the death of a US Citizen abroad, and a copy of Ms. Sifo's obituary. By doing so, Defendants have and continue to engage in deceptive practices for the sole purpose of avoiding payment of Plaintiff's bona fide claim.

**E.  COUNT 1 – Violation of Texas Insurance Code §§ 541.003 and 541.060**

24. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as if fully set forth verbatim.

25. Defendant Travelex and Defendant TCIC are entities capable of being sued under the Texas Insurance Code.

26. Defendants violated the Texas Unfair Settlement Practices Act, Ins. Code Sections 541.003 and 541.060 by doing the following:

      a.      Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim with respect to which Defendants' liability had become reasonably clear;

      b.      Failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of Plaintiff's claim;

      c.      Failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

      d.      Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue.

27. Defendants' violations of the Texas Unfair Settlement Practices Act proximately caused Plaintiff to suffer actual damages in the amount of the benefits he was wrongfully denied, incidental and consequential damages, mental anguish, court costs, and attorney's fees in an amount within the jurisdictional limits of this Court.

28. Moreover, Defendants' violation of the Insurance Code was knowing. Thus, Plaintiff is entitled to damages in an amount up to three times his actual damages pursuant to Texas Insurance Code § 541.152.

**F.    COUNT 2 – Violation of Texas Deceptive Trade Practices-Consumer Protection Act (DTPA – Texas Bus. & Com. Code §§ 17.46 and 17.50)**

29. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as if fully set forth verbatim.

30. Defendants also violated the Texas DTPA, Section 17.46, in the following ways:

  a. Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

  b. Advertising goods or services with intent not to sell them or perform as advertised;

  c. Representing that the agreement confers or involves rights, remedies, or obligations which it does not have or involve; and

  d. Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve.

31. Defendant Travelex and Defendant TCIC are corporations capable of being sued under the DTPA. Plaintiff Sifo and Plaintiff Estate are consumers under the DTPA because Plaintiff Sifo is an individual who acquired goods or services by purchase.

32. Defendants violated the DTPA when they engaged in false, misleading, or deceptive acts or practices that Plaintiff relied on to Plaintiff's detriment. Defendants refused to pay Plaintiff's claim even after Plaintiff had provided all requested information and submitted all of the necessary forms and paperwork, on several occasions. Furthermore, when Plaintiff contacted Defendants, Defendants repeatedly misrepresented to Mr. Sifo that his claim would only take a few more days or weeks, or that one of Defendants' representatives would contact him within a specified time period. Defendants made other misrepresentations to Mr. Sifo, such as Mr. Charkot's statements that he had given the information to his supervisor, and that he had all he needed to process the claim. Despite Defendants' repeated assurances that Mr. Sifo would be contacted by Mr. Charkot, and that no one else

could help Mr. Sifo, Mr. Sifo never received any form of communication from Defendants, until litigation was imminent.

33. Defendants' actions, as described above, were relied upon by Plaintiff and actually and proximately caused economic damages and mental anguish to Plaintiff in an amount within the jurisdictional limits of this Court.

34. Moreover, the Defendants' conduct, as described above, was intentional and/or knowing. Thus, Plaintiff is entitled to up to three times his mental anguish damages and economic damages pursuant to Texas Bus. & Com. Code § 17.50.

### G.   COUNT 3 – BREACH OF CONTRACT

35. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as if fully set forth verbatim.

36. Plaintiff and Defendants were parties to a contract for insurance. As required by the insurance contract, Plaintiff timely submitted valid claims for policy benefits. Defendants breached the contract by stalling and mishandling Plaintiff's valid insurance claim, then failing to pay the benefits under the policy. Defendants' breach proximately caused damages to Plaintiff in an amount within the jurisdictional limits of this Court.

37. Plaintiff made repeated claim status inquiries and demands for payment of benefits under the insurance contract. Plaintiff's demands were refused and remain unpaid.

### H. COUNT 4 – Violation of Duty to Deal Fairly and in Good Faith (Bad Faith)

38. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as is fully set forth verbatim.

39. Defendants' conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured's in insurance contracts. Defendants acted in bad faith when failing to properly investigate and evaluate this claim. For instance, Defendants continuously misdialed the international telephone number for the physician in Lagos, and failed to exercise diligence in its investigation as evidenced by the serious delays, lack of communication, and misrepresentations, as previously discussed.

40. Defendants' failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claims, although at that time Defendants knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### I. COUNT 5 – Violation of Prompt Pay Statute (Tex. Ins. Code § 542)

41. Plaintiff re-states, re-pleads, and re-alleges the previous paragraphs as if fully set forth verbatim.

42. Defendant Travelex and Defendant TCIC are entities capable of being sued under the Texas Insurance Code. Plaintiff Sifo is a claimant capable of maintaining this action under the Texas Insurance Code.

43. Defendants violated Texas' Prompt Pay Statute, Texas Insurance Code § 542 in the following ways:

      a.      Failure to, within 15 days of receiving notice of the claim:
1) acknowledge receipt of the claim;
2) commence any investigation of the claim; and
3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from claimant;

      b.      Failure to provide notice of denial or acceptance of claim, or to provide notification to claimant of reasons the insurer requires additional time; and

      c.      Delaying payment of the claim.

44. Defendants' failed to provide a timely, written acknowledgement of the claim to Plaintiff or to make a record of the date, manner, and content of the acknowledgment as required by § 542.055.

45. Defendants have never provided Plaintiffs notice of acceptance or denial of Plaintiffs' claim as required under § 542.056. Even were Defendants to require additional time to evaluate Plaintiff's claim, Defendants failed to accept or reject the claim not later than the 45th day after notification that additional time was necessary under § 542.056(d). Defendants timely received all requested information to support Plaintiffs' claim and did not object to the documentation provided by Mr. Sifo. Moreover, Defendants misrepresented to Plaintiff, among several other misrepresentations described above, that all paperwork and information had been received and that they had all information required to process the claim.

46. Additionally, Defendants failed to make a timely or specified request for additional information to process Mr. Sifo's claim. Defendants also failed to timely provide any specific reasons as to why they would need additional documents, information, or more time to fully evaluate the claim.

47. Defendants' violation of Texas' Prompt Pay Statute proximately caused Plaintiff to suffer actual damages in the amount of the benefits under the policy. Plaintiffs also seek statutory interest on the amount of the claim at the rate of 18% a year, prejudgment and postjudgment interest, court costs, and attorney's fees from Defendants as damages.

### J.   CONDITIONS PRECEDENT

48. All conditions precedent to Plaintiffs' claims have occurred or have been performed.

### K.   JURY DEMAND

49. Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

### L.   ATTORNEY FEES & COSTS

50. Plaintiffs are entitled to an award of attorney's fees and costs under Texas Civil Practice & Remedies Code Chapter 38, Section 17.50 of the Texas Business and Commerce Code, and Sections 541.152 and 542.060 of the Texas Insurance Code.

### M.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that upon final trial or hearing hereof, this Court enter judgment in favor of the Plaintiffs and against Defendants, awarding Plaintiffs actual damages, mental anguish damages, attorney's fees, compensatory damages, prejudgment and post-judgment interest, statutory interest on the amount of the claim at the rate of 18% under § 542.060, costs of court, and such other and further relief as justice may require.

Respectfully submitted,

Feldman & Feldman, P.C.

/s/ Christin L. Grant
David M. Feldman
State Bar No.: 06886700
Federal Bar No.: 2994
david.feldman@feldmanlawpc.com
Christin L. Grant
State Bar No.: 24083097
Federal Bar No.: 2656753
christin.grant@feldmanlawpc.com
3355 West Alabama Street, Suite 1220
Houston, TX 77098
(713) 986-9471 Telephone
(713) 986-9472 Facsimile
ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

**VIA E-SERVICE**
Bernie E. Hauder
Adkerson, Hauder & Bezney
1700 Pacific, Suite 4450
Dallas, Texas 73201
bernie@ahblaw.net

/s/ Christin L. Grant
Attorney for Plaintiff